UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re

SPECALLOY CORPORATION,   Case No. 16-10013-WRS
                          Chapter 7
    Debtor.


WILLIAM C. CARN, III, TRUSTEE

    Plaintiff,

v.   Adv. Pro. No. 17-1009-WRS

AUDIENTIS, LLC,

    Defendant.

## MEMORANDUM DECISION

This Adversary Proceeding is before the Court on the Motion for Summary Judgment filed by Plaintiff William C. Carn, III, the Trustee in the underlying Chapter 7 case. (Doc. 21). Trustee Carn alleges that two cash payments made by SpecAlloy Corp., the Debtor in the underlying Chapter 7 case, to Defendant Audientis, LLC, are preferences which may be avoided pursuant to 11 U.S.C §§ 547 and 550. The central issue before the Court is whether Carn is entitled to a judgment as a matter of law under Fed. R. Bankr. P. 7056. In reaching this central issue, the Court must first consider (1) whether Carn identified sufficient facts to demonstrate that there is an absence of a genuine issue of material fact regarding the five elements of a preference action and (2) whether Audientis identified sufficient facts to demonstrate the applicability of the subsequent new value defense under 11 U.S.C. § 547(c)(4). For the reasons

set forth below, the Court finds that there are no material facts in dispute and that Carn is entitled to judgment as a matter of law.

## I. FACTS

SpecAlloy Corp. ("SpecAlloy" or "Debtor") filed a petition in bankruptcy in this Court on January 5, 2016. (Case No. 16-10013, Doc. 1). Within 90 days prior to the date of the petition, SpecAlloy made two cash payments to Audientis, LLC, ("Audientis" or "Defendant"): (1) $14,000 on November 30, 2015; and (2) $571.60 on October 7, 2015. (Doc. 1, Para. 7, Doc. 5, Para. 7). Chapter 7 Trustee Carn ("Carn" or "Plaintiff") alleges, and Audientis does not dispute, that the payments were (1) made by the Debtor to Audientis, (2) on account of an antecedent debt owed by SpecAlloy, (3) while SpecAlloy was insolvent, (4) within 90 days of the date of the petition, and (5) the payments enabled Audientis to receive more than it would have received if the case were a case under Chapter 7, the transfer had not been made, and it had received payment to the extent provided by the Bankruptcy Code. Thus, it is undisputed that the elements of 11 U.S.C. § 547(b) are satisfied.[1]

Audientis has raised an affirmative defense—that it gave "subsequent new value" for the subject transfer—arguing it is protected from preferential attack.[2] 11 U.S.C. § 547(c)(4); (Doc. 26 p. 3). To consider Audientis' subsequent new value defense, one must first review what

---

[1] Carn sets out the factual predicate for a preference in his evidentiary submission. (Doc. 22). Audientis filed a response to Carn's Motion for Summary Judgment where it does not dispute any of these elements, rather, it argues exclusively, that the payments in question are supported by subsequent new value and for that reason alone, the payments are not avoidable preferences. (Doc. 26).

[2] The Defendant raised three additional affirmative defenses in its answer to the Plaintiff's complaint; however, as these defenses were not argued in the response to the motion for summary judgment and no facts are argued supporting the defenses, the Court will only consider the affirmative defense provided for under 11 U.S.C. § 547(c)(4). *See* Fed. R. Civ. P. 56(e), as incorporated by Fed. R. Bankr. P. 7056.

-2-

Case 17-01009    Doc 30    Filed 03/08/18    Entered 03/08/18 18:29:04    Desc Main
                           Document      Page 2 of 13

services Audientis performs on Debtor's behalf. The primary source of information on this is the deposition of William Pergolini. (Doc. 22, Ex. 1). Pergolini is the sole member of Audientis. (Perg. Dep. p. 9).

Pergolini testified that Audientis is in the business of providing consulting services to other businesses, which is the primary reason Audientis was hired by SpecAlloy.

> Q: Why did the debtor hire Audientis?
>
> A. Back then, they weren't a debtor. But they hired me to help them figure out their financial position and to help them negotiate some kind of an arrangement with the bank for – some kind of arrangement with the bank.
>
> Q: Did Audientis provide financial – a business plan to Specalloy?
>
> A: We worked on a couple proposals to their vendors/customer/financier/Heesun Corporation. And along with negotiated – I negotiated with Wells Fargo in some kind of, you know, an agreement with them? (Perg. Dep. p. 11).

To prevail on a subsequent new value defense, Audientis must show that it provided a subsequent advance of new value to or for the benefit of the Debtor, not secured by an otherwise avoidable security interest and on account of which new value the Debtor did not make an otherwise avoidable transfer, after the dates of transfers—November 30, 2015, for the $14,000 payment and October 7, 2015, for the $571.60 payment. 11 U.S.C. § 547(c)(4). Yet, there is no evidence in the record which shows, with any specificity, what was done after November 30, 2015, by whom was it done, when and where was it done, and whether there was any value or benefit to the debtor. In fact, when asked about the supposed services provided by Audientis

after it was paid nearly twenty-five thousand dollars, Pergolini himself is unable to provide any specifics:

> Q: Mr. Pergolini, where I am unclear is where Audientis was owed anything more than twenty-five thousand dollars. That's the point I'm unclear on.
>
> A: It's just – You'll have to take Joe's deposition, because he and I had an arrangement for the amount of work that I've done from September to January. I would sit down with Joe and say: Joe, this is what I've done. I'm going to send you an invoice for X dollars and he would say: Fine. Send it. (Perg. Dep. p. 31).

Despite Pergolini's insistence that Joseph T. Donovan ("Joe") would described the value of the subsequent services with specificity, the Defendant did not provide deposition testimony of Donovan and his affidavit failed to provide any specifics, merely stating that "Audientis provided new value in the form of his consulting services to SpecAlloy, at least in excess of [$14,000]." (Doc. 26, Aff. of Donovan p. 2).

The evidence is clear and undisputed, Audientis received payments of $571.60 on October 7, 2015, and $14,000 on November 30, 2015. William Pergolini, Audientis' sole member, testified that all of the work had been done by November 30, 2015. There is no evidence that any specific services beneficial to the Debtor were provided after the payments at issue were made.

## II. LAW

### A. Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(F). This is a final order.

### B. Summary Judgment Standard

Summary judgment is proper only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. Rule 7056, incorporating Rule 56, Fed. R. Civ. P., *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Alexander v. Southern Mills, Inc. (In re Terry Mfg. Co., Inc.),* 355 B.R. 638, 640 (Bankr. M.D. Ala. 2005).

In cases such as the case at bar, the initial burden is on the moving party.

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323.

Once the moving party meets his initial burden, the burden shifts to the nonmoving party to make a sufficient showing on any issue that it would bear the burden of proof at trial.

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the

pleadings and by her own affidavits, or by the "depositions,
answers to interrogatories, and admissions on file," designate
"specific facts showing that there is a genuine issue for trial."

*Celotex,* 477 U.S. at 324.

The Eleventh Circuit has provided further guidance on the question of what a nonmoving party must do to carry its burden on an issue that it would bear the burden of proof at trial.

> A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or otherwise as provided by the rule, must set forth specific facts showing that there is a genuine issue for trial. A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonable find for that party.

*Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

### C. Preferences and Subsequent New Value

#### 1. The Substantive Law of Preferences

Voidable preferences are defined in 11 U.S.C. § 547(b), which provides as follows:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
>
>   (1) to or for the benefit of a creditor;
>   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>   (3) made while the debtor was insolvent;
>   (4) made–(A) on or within 90 days before the date of the filing of the petition. . .
>   (5) that enable such creditor to receive more than such creditor would receive if–

>       (A) the case were a case under chapter 7 of this title;
>       (B) the transfer had not been made; and
>       (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

A transfer which meets the five elements of § 547(b) may nevertheless be unavoidable if the Defendant meets one of the provisions of § 547(c). Defendant Audientis does not dispute in its brief that the transfers in question satisfy the § 547(b) elements, rather it alleges that the transfers in question are not avoidable pursuant to § 547(c)(4), which provides as follows:

> (c) The trustee may not avoid under this section a transfer–
>
> * * *
>
>   (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor–
>
>       (A) not secured by an otherwise unavoidable security interest; and
>
>       (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

New value is defined in § 547(a)(2) of the Bankruptcy Code as follows:

> "[N]ew value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

Before delving into the minutia of the preference statute it is beneficial to consider the policy underlying the preference statute and the subsequent new value exception. First, the preference statute and underlying policy were considered by the Supreme Court in *Wolas*.

> 'A preference is a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate. The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.'

*Union Bank v. Wolas*, 502 U.S. 151, 160 (1991) (citing H.R. Rep. No. 95-595 at 177–178, U.S. Code Cong. & Admin. News 1978, pp. 6137, 6138). The policy underlying the § 547(c)(4) exception, the subsequent new value exception was considered by the Eleventh Circuit in the Jet Florida case.

> The first objective is to encourage creditors to continue extending credit to financially troubled entities while discouraging a panic-stricken race to the courthouse. Another related objective of this section is to promote equality of treatment among creditors. The subsequent advance exception promotes these general policy objectives "because its utility is limited to the extent to which the estate was enhanced by the creditor's subsequent advances during the preference period."

-8-

*Charisma Investment Co., v. Airport Systems, Inc., (In re Jet Florida System, Inc.)*, 841 F.2d 1082, 1083–84 (11th Cir. 1988) (citations omitted).

When one rubs the policy underlying preferential transfers against the subsequent new value exception, one sees that the harm to the estate, and ultimately to other creditors, of preferential transfers depleting the estate and thereby reducing the recovery to other creditors is not present when a transferee in fact provides subsequent new value. Note also that the subsequent new value exception is available only "to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor" § 547(c)(4).

For example, assume that a creditor received a preferential transfer of $100,000, and was only able to prove that he provided subsequent new value of $10,000, he would owe the estate $90,000. As the subsequent new value replenishes the estate only to the extent of value given, it follows that a central issue is the determination of the value of transfers subsequent to the creditor's receipt of the preferential transfer.

### 2. Carn Carried His Burden to Show that the Transfers in Question Meet the § 547(b) Elements

We next turn to the issue of whether Carn identified sufficient facts to demonstrate that there is an absence of genuine issue of material fact regarding the five elements of a preference action. Carn has shown that the Debtor made two payments: (1) $14,000, on November 30, 2015; and (2) $571.60, on October 7, 2015. Both payments were made to Defendant Audientis, a creditor, on account of an antecedent debt owed by Audientis. The Debtor is presumed to be insolvent for the 90 day period prior to the filing of the petition. 11 U.S.C. § 547(f). Audientis has not offered evidence that the Debtor was solvent. The hypothetical liquidation test has been

-9-

Case 17-01009   Doc 30   Filed 03/08/18   Entered 03/08/18 18:29:04   Desc Main
Document   Page 9 of 13

shown to have been met as explained in Carn's brief, making reference to the Debtor's schedules. (Doc. 23, p. 9); *see also*, *Levine v. Custom Carpet Shop, Inc., v. Flooring America, Inc., (In re Flooring America, Inc.)*, 302 B.R. 394, 403 (Bankr. N.D. Ga. 2003). Carn sufficiently sets out the factual predicate for a preference action in his evidentiary submission. (Doc. 22). Alternatively, it may be shown that Carn has established the § 547(b) elements of his preference action in that Audientis has not offered any evidence or argument to the contrary. *Whitaker v. Moskowitz (In re Dicon Tech. LLC)*, No. 12-4044 2014 WL 29362 at *1 (Bankr. S.D. Ga. Jan. 3, 2014); *see* Fed. R. Civ. P. 56(e). Therefore, argument provided supports a finding that there is no genuine issue of material fact, unless Audientis provides sufficient facts supporting the subsequent new value defense.

       3. Audientis Failed to Carry its Burden of Setting Forth Specific
          Facts Showing That There Is a Genuine Dispute as to Any Fact
          Material to its Subsequent New Value Defense.

Even if Carn establishes the factual predicate to a preference action, Audientis may be insulated from preferential attack if it can sufficiently identify facts supporting a subsequent new value defense. This brings us to the next issue, whether Audientis identified sufficient facts to support a defense under 11 U.S.C. § 547(c)(4), warranting a denial of the motion for summary judgment. The last payment, in the amount of $14,000, was made on November 30, 2015. The deposition testimony of William Pergolini established that the payment was for work done prior to November 30, 2015. The invoice attached to Audientis' Proof of Claim shows services performed in February, March, and April of 2015. To be sure, Pergolini testified in his deposition that he worked on SpecAlloy matters through and somewhat past the date of the

bankruptcy filing; however, his testimony is wholly conclusory. Audientis has shown no specific facts in support of its claim that the value of the services performed after November 30, 2015, was equal to or greater than $14,000.

One who seeks to prove a § 547(c) subsequent new value defense must cite to those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits before the Court supporting the alleged value of services rendered. To do this, it must provide a sufficient factual basis by which a fact finder may conclude that the services had value to the Debtor. The court will scrutinize the claim of a business consultant, which fails to save its client, to make sure value was in fact received by the Debtor. Audientis cannot meet its burden on summary judgment merely by alleging that it spent time with the Debtor as it was going down the drain. Similarly, mere conclusory statements that Audientis continued providing services until the filing of the petition in bankruptcy are insufficient. Rather, the consultant must provide a sufficient factual basis to prove the value of its services to the Debtor. Neither the Court nor the Trustee is obliged to accept Audientis' vague and conclusory assertion that valuable services were rendered at face value. To meet its burden summary judgment, the consultant should have stated with specificity some or all of what it did, when it did it, where it was done and, if relevant, with whom. For example, did Audientis negotiate with a banker? Who was the banker, what was offered? When was it done? Was it a reasonable and a good faith effort to save a failing debtor?[3] Is it reasonable to infer that what was done had value? One will read in vain

---

[3] The Court has long experience with charlatans who will take a distressed debtor's last dollar, making extravagant promises, yet doing nothing of value. They may be accountants, lawyers, turnaround experts, restructuring experts, business consultants, or have any number of other titles. This is not to say that Audientis is not a reputable firm; indeed, there are many reputable accountants, lawyers, turnaround experts and the like. However, a professional does not produce a tangible product, as a farmer grows corn, or a miner digs coal. As the professional's services are intangible, the means by which it shows that his service's had value requires specificity.

Case 17-01009    Doc 30    Filed 03/08/18    Entered 03/08/18 18:29:04    Desc Main
Document      Page 11 of 13

Audientis' evidentiary showing to make any such showing. The Court has carefully read all of Audientis' evidentiary submissions (Doc. 26) and concludes that, assuming all the facts represented are true—disregarding conclusions—and drawing all reasonable inferences in Audientis' favor, that Audientis failed to present a sufficient evidentiary basis upon which the Court can conclude that there is a genuine factual issue for trial on its subsequent new value defense.

### III. CONCLUSION

This is a civil action whereby a Trustee in bankruptcy seeks to set aside two cash payments, as voidable preferences, pursuant to § 547(b). The Trustee has shown, and Defendant Audientis does not dispute, that he met all of the elements under § 547(b). Audientis has raised an affirmative defense under § 547(c)(4)—that it provided subsequent new value after receipt of the preferential payments. The burden of proof is on Audientis to prove its defense. Having considered the evidentiary submission made by Audientis, having assumed that all facts stated are true, and having drawn all reasonable inferences in favor of Audientis, the Court finds that Audientis has failed to carry its burden of showing that there is a genuine issue as to any fact material to its defense. For this reason, Trustee Carn's motion for summary judgment is granted and judgment is entered in his favor in the amount of $14,571.60. The Court will enter judgment by way of a separate document.

Done this 8th day of March, 2018.

/s/ William R. Sawyer
Chief U.S. Bankruptcy Judge

c: William C. Carn, III, Chapter 7 Trustee
   Regan Loper, Attorney for Trustee/Plaintiff
   Christopher Carson, Attorney for Trustee/Plaintiff
   Russell N. Parris, Attorney for Audientis/Defendant